Honorable John C. Coughenour

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

ERICA SCOTT,

                    Plaintiff,

v.

MULTICARE HEALTH SYSTEM and
CHAD KRILICH, individually,

                    Defendants.

No.  2:18-cv-00063-JCC

PLAINTIFF'S OPPOSITION
TO DEFENDANTS' MOTION
FOR LEAVE TO RESUME
DEPOSITION OF PLAINTIFF

## I.   INTRODUCTION

Absent a showing of good cause, Federal Rule of Civil Procedure 30(d)(1) limits depositions to "one day of 7 hours." Most depositions do not exceed this limit, but those that do usually involve complex subject matter, interference from obstreperous counsel, underlying events that span decades, language barriers, or issues that otherwise prevent the deposition from being completed within the presumptive time limit.

*None* of these circumstances support Defendant MultiCare's motion to reopen Plaintiff Erica Scott's deposition for another seven hours, as Defendant fails to argue, much less demonstrate good cause warranting a second deposition. (In fact, the phrase "good cause" appears nowhere in Defendants' moving papers.) Instead, to argue for more time, MultiCare relies on Rule 26's proportionality requirement in an attempt to circumvent

PLTF.'S OPP. TO DEF.'S MOT. FOR LEAVE TO
RESUME PLTF.'S DEP. (18-CV-00063) – 1

SCHROETER GOLDMARK & BENDER
810 Third Avenue ● Suite 500 ● Seattle, WA 98104
Phone (206) 622-8000 ● Fax (206) 682-2305

Rule 30(d)(1), taking aim at Plaintiff for enforcing the seven-hour rule—as if calling "time" on an overlong deposition is an unsavory practice—and Plaintiff's scheduled depositions of MultiCare's directors. Nothing prevents MultiCare, however, from noting additional depositions or from speaking to the management officials Plaintiff plans to depose whenever it likes for an unlimited amount of time—something the Rules forbid Dr. Scott from doing. More than anything, MultiCare claims that it was deprived of an opportunity to fully and fairly depose Dr. Scott, but the record easily belies this claim as *all* of the subjects MultiCare requests additional time to explore were addressed during Plaintiff's deposition. A *post hoc* realization about potential follow-up questions does not justify a re-do or do-over.

As explained more fully below, MultiCare had a full and fair opportunity to depose Dr. Scott. Permitting it to reopen and extend Dr. Scott's deposition would work an unfair advantage for MultiCare and prejudice Dr. Scott. As such, MultiCare has failed to establish good cause to deviate from the 1-day/7-hour rule, and its motion for leave should be denied.

## II.   STATEMENT OF FACTS

Plaintiff Erica Scott, M.D., is an African-American surgeon whom MultiCare employed from about January 2013 until it terminated her employment effective May 23, 2016. *See* Dkt. No. 13 (First Amended Complaint or "FAC") and Dkt. No. 28 (Defendants' Motion for Leave to Depose or "Mot."). MultiCare offered Dr. Scott a contract extension in January 2016, but fired her less than a month later after she reported patient-safety concerns and unfair treatment at work. FAC ¶¶ 2.10-2.15. Dr. Scott filed this lawsuit in King County Superior Court on December 22, 2017, but Defendants removed this action to federal district court on January 16, 2018. Dkt. No. 1 (Notice of Removal). Dr. Scott

PLTF.'S OPP. TO DEF.'S MOT. FOR LEAVE TO
RESUME PLTF.'S DEP. (18-CV-00063) – 2

amended her complaint on February 5, 2018, stating claims under state and federal law for race and sex discrimination and retaliation, among other things. FAC at ¶¶ 3.1-3.20.

On April 2, 2018, the parties held a Rule 26(f) conference to discuss a number of topics, including anticipated discovery needs. Declaration of Jamal Whitehead ("Whitehead Decl.") at ¶1. The parties agreed that the case was of moderate complexity, and MultiCare expressed neither a need nor a desire to depose Dr. Scott for 14 hours. *Id.* On May 7, 2018, the day before the parties Status Conference with the Court, the parties discussed discovery and other scheduling issues, but once again, MultiCare did not propose deposing Dr. Scott for longer than allowed by the federal rules. *Id.* at ¶2. At the Status Conference, MultiCare did not seek leave of Court to depose Dr. Scott for an enlarged period of time. *Id.*

MultiCare first raised the subject of deposing Dr. Scott in an email dated August 24, 2018, writing simply, "We would like to note the deposition of Dr. Scott at our office for October 1 and 2. Please advise if you foresee any issues with those dates." Dkt. No. 29 (Declaration of Nicholas A. Gillard-Byers ("Gillard-Byers Decl.")), Ex. 1. Apart from the use of the conjunction "and," MultiCare offered no indication that it planned to depart from the Civil Rules with respect to the duration of Dr. Scott's deposition. Plaintiff's counsel had trial conflicts on the dates proposed by MultiCare, and offered that *counsel* was available the weeks of October 28 and November 19, but that Dr. Scott's availability was unknown. Gillard-Byers Decl., Ex. 2. Contrary to MultiCare's representation, Dr. Scott did not offer and then retract any dates. *Compare id. with* Mot. at ¶8. Dr. Scott sought to confirm her deposition date for either November 19 *or* 20, and it was then that counsel for Dr. Scott learned that MultiCare sought to depose Dr. Scott over two days. Whitehead Decl., ¶3.

SCHROETER GOLDMARK & BENDER
810 Third Avenue ● Suite 500 ● Seattle, WA 98104
Phone (206) 622-8000 ● Fax (206) 682-2305

The parties held a telephone conference on October 15, 2018, to discuss their differences, but MultiCare held firm to its insistence that Dr. Scott sit for a two-day, 14-hour deposition. *Id.* at ¶4. Counsel offered no justification beyond a statement that MultiCare *"may"* need more time to depose Dr. Scott. *Id.;* Gillard-Byers Decl., Ex. 2. Dr. Scott objected to MultiCare's proposal, but agreed to be deposed on November 20, 2018. Whitehead Decl., ¶4. Appearing at deposition was no easy feat for Dr. Scott, as it required her to clear her surgical calendar and fly cross-country from Atlanta to Seattle. *Id.* Before her deposition, Dr. Scott's counsel wrote MultiCare as follows:

> Finally, I think the record is clear on this point, but it's worth repeating: the timing of Dr. Scott's deposition is entirely within MultiCare's control; taking a wait-and-see approach to how her testimony unfolds next Monday is not good cause to stray from the seven-hour rule, and we will oppose any efforts to extend Dr. Scott's deposition beyond "1 day of 7 hours." See Rule 30(d)(1).

Whitehead Decl., Ex. 1.

On November 20, 2018, MultiCare deposed Dr. Scott for *over* seven hours, as the deposition began at 9:00 a.m. and ended at 5:33 p.m. (which felt like 8:33 p.m. to Dr. Scott given the time difference). The pace of examination was deliberate and covered many topics that MultiCare was in a better position to answer than Dr. Scott. For example, MultiCare inquired about Dr. Scott's FTE status and her reporting structure at MultiCare. Whitehead Decl., Ex. 2, (Dep. Tr. of Erica Scott, M.D.) at pp. 19-20, 32-33, 40-41. Other topics were irrelevant, such as questions about Dr. Scott's minor children and details about various medical procedures. *Id.* at pp. 52-53, 105-106.

MultiCare makes much of the fact that counsel for Dr. Scott called "time" when MultiCare had reached seven-hours, but counsel for the parties discussed how MultiCare's examination time was running short during the last break of the day. Whitehead Decl., ¶7.

1    The parties consulted with the Court Reporter about the time remaining, and it was agreed

2    that Plaintiff's counsel would simply "stop" MultiCare's attorney when time expired. *Id.;*

3    Scott Tr. at pp. 198:17-199:1 ("I may jump around a little bit given our time limitation…").

4    Counsel for Dr. Scott did just that; even so, MultiCare requested two additional questions,

5    which Plaintiff's counsel allowed. *Id.* at pp. 252-253. It is not clear from Defendants' motion

6    how much longer MultiCare would have continued with its questioning had Dr. Scott's

7    counsel *not* ended the proceedings.

8         Following Dr. Scott's deposition, the parties revisited the subject of reopening her

9    deposition; Plaintiff's counsel responded to MultiCare's request as follows:

10       First, our position regarding Dr. Scott sitting for a second deposition is
         unchanged from my November 13, 2018, email: MultiCare is entitled to
11       "1 day of 7 hours" for Dr. Scott's deposition. Rule 30(d)(1). Then, as now,
         MultiCare has offered no compelling reason to deviate from the standard
12       seven-hour rule, and absent some new justification, we will oppose any
         efforts to depose Dr. Scott for a second day. This is especially true given
13       that Dr. Scott lives in Georgia, and would have to miss time away from
         her patients to travel cross-country, and at her expense to boot.

14   Whitehead Decl., Ex. 3.

15        Since her deposition, Dr. Scott has deposed two MultiCare witnesses: Dr. Leaza

16   Dierwechter and Dr. Nancy Juhlin.[1] Whitehead Decl., ¶9. Dr. Dierwechter and Dr. Juhlin

17   both testified that they were represented by MultiCare's attorneys and had met with them

18   individually on *at least* three separate occasions with meeting times ranging from one to

19   several hours. *Id.* Excluding breaks, Dr. Dierwechter's deposition lasted approximately six

20   hours while Dr. Juhlin's deposition ran about four hours. *Id.* Dr. Scott is scheduled to depose

21   four additional witnesses through the end of March and into April: Dr. Claire-Spain Remy,

22

23   [1] Dr. Dierwechter and Dr. Juhlin's depositions took place on March 19 and 21, respectively. As of the
     time of this writing, their deposition transcripts are not yet ready for review.

24

25   PLTF.'S OPP. TO DEF.'S MOT. FOR LEAVE TO          SCHROETER GOLDMARK & BENDER
     RESUME PLTF.'S DEP. (18-CV-00063) – 5            810 Third Avenue • Suite 500 • Seattle, WA 98104
                                                       Phone (206) 622-8000 • Fax (206) 682-2305

Dr. Hanafy Hanafy, Dr. Chad Krilich, and Dr. Brereton Stratford. Each witness is believed to have played a role in the discrimination and retaliation suffered by Dr. Scott or her termination or both. *Id.*

According to MultiCare's initial disclosures, each of the remaining witnesses is to be contacted through counsel only. Whitehead Decl., Ex. 4 (MultiCare's Initial Disclosures). In fact, of the 19 witnesses listed by MultiCare all but four are to be contacted through MultiCare's attorneys, severely limiting the number of witnesses Dr. Scott may contact outside a formal deposition.

### III.   LEGAL ARGUMENT

Unless otherwise ordered by the court or stipulated by the parties, "a deposition is limited to *one day of 7 hours.*" Fed. R. Civ. P. 30(d)(1) (emphasis added). The seven-hour limit "was carefully chosen and … extensions of that limit should be the exception, not the rule." *Roberson v. Bair*, 242 F.R.D. 130, 138 (D.D.C. 2007). "[T]he seven-hour limit encourages efficiency; it has been said that a writer's best friends are a deadline and a page limitation. The same may be said of lawyers conducting depositions." *Id.* Even without this limitation, however, most depositions do not exceed the one–day limit. 8A Charles A. Wright & Arthur R. Miller, Fed. Prac. & Proc. Civ. § 2104.1 n. 9 (3d ed.) ("A survey conducted by the Federal Judicial Center in 1997 of 1,000 recently closed cases indicated that, at the 75th percentile, the longest deposition in hours in cases studied was seven. (citations omitted)).

The party seeking a longer deposition bears the burden of establishing good cause for exceeding the limit. Fed. R. Civ. P. 30(d)(1); Notes of the Advisory Committee on the 2000 Amendment. Determining whether good cause exists involves a fact-intensive inquiry. *United States Sec. & Exch. Comm'n v. Kandalepas*, No. 18-CV-2637, 2018 WL 4005201, at

SCHROETER GOLDMARK & BENDER
810 Third Avenue ● Suite 500 ● Seattle, WA  98104
Phone (206) 622-8000 ● Fax (206) 682-2305

*1–2 (N.D. Ill. Aug. 22, 2018). "Courts may consider, for example, whether 'the examination will cover events occurring over a long period of time,' 'the witness will be questioned about numerous or lengthy documents,' or expert witnesses will be involved." *Id.* (quoting Advisory Committee Note to 2000 Amendments to Fed. R. Civ. P. 30(d)(1)). Additional time may also be permitted if "needed to fairly examine the deponent or if the deponent, another person, or any other circumstance impedes or delays the examination." Fed. R. Civ. P. 30(d)(1); *see Barajas v. Abbott Labs., Inc.*, No. 18-CV-00839-EJD (VKD), 2018 WL 6248550, at *6 (N.D. Cal. Nov. 29, 2018 (denying defendant's motion to compel second deposition; "Nor has [defendant] shown that the case is so complex that three additional hours of deposition time is necessary for a fair examination of [plaintiff], or that a delay in document production requires additional deposition time.").

MultiCare has not and cannot carry its burden of establishing good cause to reopen and extend Dr. Scott's deposition.

### A.   MultiCare Had An Opportunity To Fully and Fairly Explore Dr. Scott's Testimony During Her Already-Completed Deposition.

The events at issue in this case span three years. During this time, Dr. Scott had three direct supervisors, received three annual performance reviews, and was offered one contract extension. MultiCare *does not* argue that the case is legally or factually novel or complex. Nor does it argue that Dr. Scott or her counsel impeded her deposition. Nor does it claim the need to depose Dr. Scott about a lengthy timeline or voluminous documents. Indeed, MultiCare fails to explain *what* about this employment discrimination/retaliation case, as opposed to any other, warrants extra time for the plaintiff's deposition.

In truth, MultiCare requests double the time allotted under the rules for no other reason than it would prefer more time with Dr. Scott. This does not constitute good cause

SCHROETER GOLDMARK & BENDER
810 Third Avenue ● Suite 500 ● Seattle, WA 98104
Phone (206) 622-8000 ● Fax (206) 682-2305

1   under the rules to reopen Dr. Scott's deposition,[2] as MultiCare had an opportunity to fully

2   and fairly explore her testimony, but by its own admission, failed to do so. MultiCare's list of

3   so-called topics "not fully developed or not yet addressed," illustrates this point. *See* Mot. at

4   pp. 4-5.

5        First, MultiCare seeks more time to depose Dr. Scott about MeQIMs—a type of

6   anonymous complaint—she received while working at MultiCare, but the topic of MeQIMs

7   came up over a dozen times. *See* Scott Tr. at pp. 7, 27, 109-111, 125, 140-141, 165-169, 171-

8   172, 175-176, 182, 202-204, 206, 208, 221. Second, MultiCare claims it did not have time to

9   examine Dr. Scott about the substance of her patient-safety concerns, but here again, the

10  transcript disproves its claims, as Dr. Scott testified at length about her safety concerns and

11  fears about MultiCare's excessive "on-call" burdens leading to surgeon "burnout." *Id.* at pp.

12  68, 78, 102, 105, 107, 108, 110, 111, 113, 114, 124, 137, 138, 155, 170, 182, 209. Third,

13  MultiCare seeks additional time to examine Dr. Scott about audio-recordings she made of her

14  meetings with management during which she reported her patient-safety concerns and her

15  belief that she was caught in a "witch hunt" and *not* subject to a "level-playing ground."[3] Dr.

16  Scott testified about the recordings multiple times. *Id.* at pp. 94, 121, 123, 129, 133, 157, 161.

17  Fourth, MultiCare claims "counsel has not had time to examine Plaintiff" about her claim

18  that she was subjected to a double standard, Mot. at p. 5, but counsel asked multiple

19

20  [2] *Steshenko v. McKay*, 09-CV-05543-RS (PSG), 2012 WL 13054713, at *2 (N.D. Cal. June 22, 2012) (denying request for additional time to depose plaintiff because "[a]side from merely speculating that more time beyond seven hours is needed to examine [plaintiff], no specific grounds to justify a longer deposition have been provided"); *Somerset Studios, LLC v. Sch. Specialty, Inc.*, No. C 10–5527 MEJ, 2011 WL 4344596, at *8 (N.D. Cal. Sept. 14, 2011) (rejecting request to double deposition time based in part on "the complexity of the issues and the sheer number of documents that need to be reviewed").

21

22

23  [3] Dr. Scott received permission to make the audio-recordings in question and produced the recordings in full as part of her initial disclosures to Defendants. Whitehead Decl., ¶11; Ex. 5.

24

25  PLTF.'S OPP. TO DEF.'S MOT. FOR LEAVE TO         SCHROETER GOLDMARK & BENDER
    RESUME PLTF.'S DEP. (18-CV-00063) – 8          810 Third Avenue ● Suite 500 ● Seattle, WA 98104
                                                   Phone (206) 622-8000 ● Fax (206) 682-2305

questions about precisely this issue: "Q: … *Who are the non-African-American male counterparts who you contend the double standard was applied to*?" *Id.* at p. 63:1 to 63:12 (emphasis added); *see also id.* at pp. 64-68, 84-85, 125. Lastly, MultiCare argues that it did not have an opportunity to explore Dr. Scott's claims of implicit bias or her understanding of the term, Mot. at p. 7-8, but once again, the actual transcript contradicts MultiCare's representation to the Court: "Q: … First of all, what do you mean by implicit bias?" *Id.* at 174:13-14; *see also id.* at pp. 63.

As demonstrated by the record, MultiCare covered each of the topics highlighted in its motion during Dr. Scott's deposition. That MultiCare has thought of more or better questions after the fact does not constitute good cause to reopen and extend Dr. Scott's deposition. Moreover, the topics MultiCare identifies as requiring further exploration were hardly a secret given that MultiCare alleges the MeQIMs played a central role in its decision to terminate Dr. Scott, and when Dr. Scott pleaded her claims of race and sex discrimination, retaliation, and her patient-safety concerns. If anything, MultiCare's need for additional time demonstrates that it failed to prioritize the topics it planned to cover at deposition. *Bookhamer v. Sunbeam Products, Inc.*, No. C 09–6027 EMC (DMR), 2012 WL 5188302, *3 (N.D. Cal. Oct. 19, 2012) (reasoning that a "tactical decision that resulted in a litigation disadvantage does not warrant the reopening" of plaintiff's deposition).

### 1.     The cases cited by MultiCare are inapposite.

MultiCare cites several decisions from this District in support of its motion, but these cases are easily distinguished. For example, in *Am. Fast Freight, Inc. v. Nat'l Consolidation & Distrib.,* 2007 WL 3357694 (W.D. Wash. Nov. 7, 2007), the court granted the plaintiff leave to examine the defendant for an additional five hours, but only because the defendant's

30(b)(6) designee was unprepared to testify at deposition, and because the defendant had failed to answer the plaintiff's written discovery requests in advance of the deposition. Here, MultiCare does not allege that Dr. Scott was unprepared to testify or that she unreasonably failed to answer MultiCare's discovery requests before her deposition. Likewise, MultiCare's reliance on this Court's decision in *EEOC v. Lowes' HIW, Inc.,* 2009 WL 811495 (W.D. Wash. March 27, 2009), is similarly misplaced. In *Lowes,* the Court permitted counsel for the individually named co-defendant to examine the plaintiff about matters not previously covered. Here, as shown above, Defendants have fully and fairly deposed Dr. Scott on *all* matters identified in their moving papers. Moreover, at no point have Defendants argued that Dr. Krilich—who is represented by the same counsel—would have pursued a different line of inquiry. *See* Hon. Coughenour Chamber Procedures E.2(a) ("If there are multiple parties, each side should ordinarily designate one attorney to conduct the main examination of the deponent, and any questioning by other counsel on that side should be limited to matters not previously covered."). Finally, in *Grill v. Costco Wholesale Corp.,* 2004 WL 2314639, at *1 (W.D. Wash. Oct. 7, 2004)—a case litigated by the same defense counsel as here—the court granted the defendant's motion for leave to reopen and extend the plaintiff's deposition because the case involved approximately 30 separate occasions of discrimination at five separate locations; moreover, the plaintiff had failed to produce relevant documents in response to the defendant's requests. Here, the facts at issue occurred over a discrete period in the same location, providing for a linear chain of events.

### B.     Rule 26's Proportionality Requirement Does Not Weigh In Favor of a Second Deposition.

MultiCare argues it is owed an additional seven hours with Dr. Scott because she has noted six depositions of her own. This argument is misguided for several reasons. First, Dr.

SCHROETER  GOLDMARK  &  BENDER
810 Third Avenue • Suite 500 • Seattle, WA 98104
Phone (206) 622-8000 • Fax (206) 682-2305

1   Scott has identified at least 20 witnesses with knowledge of her claims, while MultiCare has

2   identified 19 people; nothing prevents MultiCare from contacting or deposing any of these

3   witnesses to even the scales. In fact, MultiCare recently served Dr. Scott with notice of a

4   subpoena seeking the deposition of a former MultiCare employee living in Texas. Whitehead

5   Decl., Ex. 6. Second, Dr. Scott has limited herself to the 1-day/7-hour rule despite the fact

6   that she faces more hurdles in discovering relevant facts. Here, MultiCare controls access to

7   most, if not all, of the relevant documents, and has unlimited access to management

8   witnesses while Dr. Scott must depose each witness to assemble the facts of her case. Finally,

9   Advisory Committee comments to Rule 26 recognize an "information asymmetry" in cases

10  like this, in which the burden of responding to discovery falls heavier on corporate

11  defendants who have access to and control the majority of discoverable information. *See*

12  Advisory Committee Note to 2015 Amendments to Rule 26 ("'Some cases involve what

13  often is called 'information asymmetry.' One party -- often an individual plaintiff -- may

14  have very little discoverable information. The other party may have vast amounts of

15  information, including information that can be readily retrieved and information that is more

16  difficult to retrieve. In practice these circumstances often mean that the burden of responding

17  to discovery lies heavier on the party who has more information, and properly so."). Thus,

18  the fact that Dr. Scott may depose more witnesses does not mean that she has somehow

19  engaged in an unfair or *disproportionate* amount of discovery.

20       **C.     Dr. Scott will be Prejudiced if MultiCare is Permitted to Reopen and
                  Extend her Deposition.**

21       The seven-hour rule means that choices must be made about the topics to be covered

22  and the time to be spent on each topic, and attorneys must pace themselves accordingly.

23  Allowing MultiCare to circumvent the seven-hour rule premised only on the tautology that it

24

25  PLTF.'S OPP. TO DEF.'S MOT. FOR LEAVE TO          SCHROETER GOLDMARK & BENDER
    RESUME PLTF.'S DEP. (18-CV-00063) – 11           810 Third Avenue ● Suite 500 ● Seattle, WA  98104
                                                     Phone (206) 622-8000 ● Fax (206) 682-2305

needed more time because it needed more time would "eviscerate the rule," as extensions would be granted as a matter of course if this were the case. *Roberson*, 242 F.R.D. at 138. Allowing a second deposition to proceed would give MultiCare an unfair tactical advantage and disrupt the settled expectations of Dr. Scott as embodied in the Civil Rules.

Moreover, while MultiCare sought an agreement for a two-day, 14-hour examination in advance of Dr. Scott's deposition, it presented its request in a take-it-or-leave-it fashion. Whitehead Decl., ¶13. Dr. Scott has long made know her opposition to an extended deposition, and given her lengthy and expensive travel arrangements and modifications to her surgical schedule at work, MultiCare should have brought this issue to the Court sooner. *See Del Sol v. Whiting,* CV-10-01061-PHX-SRB, 2015 WL 12090268, at *4 (D. Ariz. Mar. 10, 2015) (finding plaintiffs' request for an extended deposition untimely). If forced to appear for a second deposition, Dr. Scott will incur costs in flying cross-country, as well as costs associated with preparing for another deposition. To force a deponent and her lawyer to prepare for a deposition twice, at separate times, is manifestly unfair, a waste of resources, and turns the discovery rules on their head.

## IV.   CONCLUSION

Because good cause is lacking to reopen and extend her deposition, Plaintiff respectfully requests that the Court deny Defendants' motion for leave to resume her deposition. Alternatively, if the Court is inclined to grant the motion, Dr. Scott requests a reasonable time limit of two hours and the ability to appear for deposition by video conference.

DATE this 25th day of March, 2019.

1

SCHROETER GOLDMARK & BENDER

2

*s/ Jamal Whitehead*

REBECCA J. ROE, WSBA #7560

3

JAMAL WHITEHEAD, WSBA #39818

810 Third Avenue, Suite 500

4

Seattle, WA  98104

Phone:  (206) 622-8000

5

roe@sgb-law.com

whitehead@sgb-law.com

6

*Counsel for Plaintiff*

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

PLTF.'S OPP. TO DEF.'S MOT. FOR LEAVE TO
RESUME PLTF.'S DEP. (18-CV-00063) – 13

1

## CERTIFICATE OF SERVICE

2      I certify that I caused to be served in the manner noted below a copy of the foregoing

3  pleading on the following individual(s):

4  *Counsel For Defendant:*                    ☐ Via Facsimile
   Nicholas Gillard-Byers                      ☐ Via First Class Mail
5  Steven H. Winterbauer                       ☐ Via Messenger
   Winterbauer & Diamond, PLLC                 ☐ Via Email
6  1200 Fifth Avenue, Suite 1700               ☒ Via EFiling/EService
   Seattle, WA 98101
7  steven@winterbauerdiamond.com
   mail@winterbauerdiamond.com

8

9      DATED this 25th day of March, 2019, at Seattle, Washington.

10

11                                          *s/ Jamal Whitehead*
                                            _____
12                                          JAMAL WHITEHEAD, WSBA #39818
                                            SCHROETER GOLDMARK & BENDER
13                                          810 Third Avenue, Suite 500
                                            Seattle, WA  98104
14                                          Phone:  (206) 622-8000
                                            Fax:  (206) 682-2305
15                                          whitehead@sgb-law.com

16

17

18

19

20

21

22

23

24

25  PLTF.'S OPP. TO DEF.'S MOT. FOR LEAVE TO          SCHROETER GOLDMARK & BENDER
    RESUME PLTF.'S DEP. (18-CV-00063) – 14            810 Third Avenue ● Suite 500 ● Seattle, WA  98104
                                                      Phone (206) 622-8000 ● Fax (206) 682-2305