Honorable John C. Coughenour

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| ERICA SCOTT,<br><br>　　　　　　　　　Plaintiff,<br><br>　v.<br><br>MULTICARE HEALTH SYSTEM and CHAD KRILICH, individually,<br><br>　　　　　　　　　Defendants. | No. 2:18-cv-00063-JCC<br><br>PLAINTIFF'S MOTION FOR PROTECTIVE ORDER REGARDING DEFENDANTS' PROPOSED THIRD-PARTY DISCOVERY<br><br>Note on Motion Calendar:<br>April 5, 2019 |

## I.   INTRODUCTION

By filing an employment discrimination and retaliation lawsuit against her former employer Defendant MultiCare Health System, Plaintiff Erica Scott, M.D., has placed her employment history with *MultiCare* at issue, not her employment history with her *current* employer. Nevertheless, MultiCare has proposed subpoenaing "all documents" related to Dr. Scott's performance from her current employer, including "performance reviews, productivity reports, quality improvement reports, counseling, write-ups, or any record of disciplinary action…." Dr. Scott has a legitimate privacy interest in her employment records and relationship with her current employer, and courts routinely protect them from disclosure.

PLTF.'S MOT. FOR PROTECTIVE ORDER (18-CV-00063) – 1

SCHROETER GOLDMARK & BENDER
810 Third Avenue ● Suite 500 ● Seattle, WA 98104
Phone (206) 622-8000 ● Fax (206) 682-2305

MultiCare suggests the records are necessary to determine whether Dr. Scott has had performance issues at her new job, which would somehow support an inference that complaints about her performance at MultiCare were legitimate and non-discriminatory. As a practical matter, Dr. Scott testified at deposition that she has received no performance reviews or disciplinary write-ups at her new job, but as an evidentiary matter, such "evidence" is irrelevant in the context of the claims and defenses at issue in the case. Thus, the only reasonable conclusion to draw from MultiCare's position is that it has no legitimate need for the records it seeks; rather, it wishes to engage in the proverbial fishing expedition and continue the mistreatment Dr. Scott has already been forced to endure by MultiCare.

Accordingly, Dr. Scott respectfully requests that the Court issue a protective order prohibiting discovery of her current performance and disciplinary-related documents to avoid injuring her current employment relationship.

## II.   STATEMENT OF FACTS

Dr. Scott brings state and federal law claims against MultiCare for employment discrimination and retaliation, seeking, *inter alia,* damages for lost wages and emotional distress. Dkt. No. 13 (First Am. Compl. or "FAC") at p. 7. Dr. Scott worked as a general surgeon at MultiCare's Auburn, Washington, Medical Center. *Id.* at ¶2.3. MultiCare held Dr. Scott to a double-standard at work because of her race and sex, and when she reported the discrimination she experienced and her concerns about patient-safety, MultiCare terminated her employment. *Id.* at ¶¶2.5-2.15. Dr. Scott's patient-safety concerns arose from the excessive workload and "on-call" time MultiCare demanded from her and its small group of general surgeons, which Dr. Scott felt was leading to "surgeon burn out" and having a negative impact on the care MultiCare provided. *Id.* at ¶¶2.7-2.9.

Following her termination, Dr. Scott relocated with her family to Atlanta, Georgia, where she began working as a surgeon for Piedmont Healthcare ("Piedmont"). Declaration of Jamal Whitehead ("Whitehead Decl."), Ex. 1 (Deposition Transcript of Erica Scott) at pp. 7-8, 11.

Through the course of discovery, Dr. Scott has produced to MultiCare her (1) employment contract with Piedmont, (2) Form W-2s from 2015, 2016, and 2017, (3) paystubs from Piedmont from September 30, 2018, to October 27, 2018, and (4) Piedmont's 2018 and 2019 annual on-call surgical schedules, among other things. Whitehead Decl. ¶3. In addition, Dr. Scott testified at deposition about her on-call duties at Piedmont, Scott Tr. at pp. 14-20, and how she has received no written performance evaluations or disciplinary write-ups. *See* Scott Tr. at pp. 8-9.

Even so, on January 28, 2019, MultiCare asked Dr. Scott to produce "All documents related to write-ups or disciplinary matters" and "Any documentation of counseling or performance reviews." Whitehead Decl., Ex. 2 (Whitehead/Gillard-Byers Email Exchange) at pp. 5-6. The next day, Dr. Scott objected to MultiCare's request and asked it to outline any "authority or some compelling rationale" calling for the production of the requested materials. *Id.* at pp. 4-5, *see also* Whitehead Decl., Ex. 3 (Whitehead email to Gillard-Byers, Nov. 13, 2018).

Almost a month later, MultiCare responded by email attempting to "distil[l]" its argument, insisting that Dr. Scott's disciplinary/performance-related documents were necessary because MultiCare was "not required to take the Plaintiff's description of facts without testing the same with whatever documents exist," and further that the requested documents were relevant because "Dr. Scott's allegations include the theory that she was

PLTF.'S MOT. FOR PROTECTIVE ORDER (18-CV-00063) – 3

SCHROETER GOLDMARK & BENDER
810 Third Avenue • Suite 500 • Seattle, WA 98104
Phone (206) 622-8000 • Fax (206) 682-2305

singled out improperly for criticism, including MeQIMs [*i.e.*, a type of anonymous complaint], and thus we need to determine if another hospital (indeed, one which she states is much better) has written her up for similar incidents." Whitehead Decl., Ex. 2 at pp. 2-3.

On March 18, 2019, MultiCare served Dr. Scott with advance notice of its intent to subpoena records from Piedmont—her current employer. The proposed subpoena in relevant part commands Piedmont to produce the following:

> 1. All documents related to the on-call duties, including without limitation scheduling, of general surgeons within Piedmont HealthCare, Inc., for the time period January 1, 2014 to present. This includes any documents outlining who must provide on-call coverage, policies and procedures for the number of on-call days that a general surgeon must cover, and any limits on the minimum or maximum number of on-call days a general surgeon may be assigned in any particular time period. This also includes all on-call schedules for any facility at which Dr. Erica Scott has worked for Piedmont HealthCare, Inc., for the same time period (regardless of whether Dr. Scott is on the particular schedule). This also includes any records indicating the amount of calls Dr. Scott responded to and/or the amount of time Dr. Scott spent on those calls.
>
> 2. All documents related to the performance of Dr. Erica Y. Scott, including without limitation performance reviews, productivity reports, quality improvement reports, counseling, write-ups, or any record of disciplinary action relating to Dr. Erica Y. Scott.

Whitehead Decl., Ex. 4 (Subpoena).

On March 28, 2019, the parties met and conferred about MultiCare's planned subpoena, and eventually reached an agreement regarding the first category of documents requested by MultiCare—Piedmont's on-call records—wherein MultiCare would propound written discovery to Dr. Scott to obtain the same information requested by the proposed subpoena. Whitehead Decl., ¶ 7, Ex. 5-6 (Emails). In its final email to Plaintiff's counsel,

MultiCare articulated the relevance of Dr. Scott's performance and disciplinary records as follows:

> Performance-related documentation, including performance reviews (formal or informal), counseling/write-ups, or any other document that would indicate problems with Dr. Scott's behavior or performance (akin to the MeQIMs we produced). These are directly relevant given that Dr. Scott's theory includes the allegation that she was written up unfairly at AMC, and therefore we need to determine if her current employer is writing her up for similar issues, as it would support the fairness of being written up similarly at AMC.

Whitehead Decl., Ex. 6.

### III.   RULE 26 CERTIFICATION

The parties have met and conferred in good faith to resolve the issues raised in this motion, but no agreements concerning Dr. Scott's performance/disciplinary-related records could be reached. Whitehead Decl., ¶7.

### IV.   LEGAL ARGUMENT

#### A.   Standard of Review.[1]

For good cause, the Court may issue a protective order to prevent "annoyance, embarrassment, oppression, or undue burden or expense" in connection with documents sought in discovery. Fed. R. Civ. P. 26(c). A proper basis for a protective order includes "forbidding inquiry into certain matters, or limiting the scope of disclosure or discovery to certain matters." Fed. R. Civ. P. 26(c)(1)(D). District courts are vested with broad discretion in determining whether a protective order is appropriate and, if so, what degree of protection

---

[1] The standard of review is taken verbatim from this Court's order in *Rollins v. Traylor Bros., Inc.,* C14-1414-JCC, 2017 WL 1756576, at *1 (W.D. Wash. May 5, 2017) (granting plaintiffs' motion to quash and granting plaintiffs' motion for protective order, in part, finding performance records from subsequent employers were irrelevant in an employment discrimination case against their former employer).

is warranted. *Seattle Times Co. v. Rhinehart*, 467 U.S. 20, 36 (1984); *Phillips ex rel. Estate of Byrd v. Gen. Motors Corp.*, 307 F.3d 1206, 1211–12 (9th Cir. 2002). The party seeking to limit discovery has the burden of proving "good cause," which requires a showing "that specific prejudice or harm will result" if the protective order is not granted. *In re Roman Catholic Archbishop of Portland in Or.*, 661 F.3d 417, 424 (9th Cir. 2011); *Beckman Indus., Inc. v. Int'l Ins. Co.*, 966 F.2d 470, 476 (9th Cir. 1992) ("Broad allegations of harm, unsubstantiated by specific examples or articulated reasoning, do not satisfy the Rule 26(c) test.") (internal citation omitted).

### B. The Great Weight of Authority Prohibits Discovery Into Plaintiff's Employment Records with Her Subsequent Employer.

Dr. Scott's employment relationship with MultiCare is at issue in this case, yet MultiCare's proposed subpoena seeks "all documents" related to Dr. Scott's performance, including "performance reviews, productivity reports, quality improvement reports, counseling, write-ups, or any record of disciplinary action….," from her *current* employer. Dr. Scott has a strong privacy interest in such information,[2] which courts are loathe to intrude upon needlessly. *See, e.g., Blotzer v. L-3 Commc'ns Corp.*, 287 F.R.D. 507, 509 (D.Ariz. 2012) ("Personnel files may contain information that is both private and irrelevant to the case, therefore special care must be taken before personnel files are turned over to an adverse party."); *Miles v. Boeing, Co.*, 154 F.R.D. 112, 115 (E.D.Pa. 1994) (finding that personnel

---

[2] This same privacy interest confers standing upon Dr. Scott to seek an order quashing the subpoena at issue. *See, e.g., U.S. v. Raineri*, 670 F.2d 702, 712 (7th Cir.1982) ("A party has standing to move to quash a subpoena addressed to another if the subpoena infringes upon the movant's legitimate interests."); *Richards v. Convergys Corp.*, 2:05-CV-00790-DAK, 2007 WL 474012, at *1 (D. Utah Feb. 7, 2007) (quashing subpoena for employment records; finding personal right to information in personnel files sufficient to confer standing to quash subpoena served on third party; collecting cases).

files are confidential, discovery concerning them should be limited)); *see also Dawson v. Daly*, 845 P.2d 995, 1003-02 (1993) (finding disclosure of a public employee's performance evaluation to be highly offensive and violative of employee's right to privacy as provided to public employees by statute). For this reason, courts routinely quash or limit subpoenas issued to non-party employers on the basis of relevance. *See e.g.*, *Woods v. Fresenius Med. Care Grp. of N.A.*, No. 1:06-cv-1804-RLY-WTL, 2008 WL 151836 (S.D. Ind. Jan. 16, 2008); *Warnke v. CVS Corp.*, 265 F.R.D. 64, 66 (E.D.N.Y. 2010); *Maxwell v. Health Ctr. of Lake City,* No. 3:05-CV-1056-J-32MCR, 2006 WL 1627020 at *2 (M.D.Fla. June 6, 2006); *Martinez v. Target Corp.*, 278 F.R.D. 452, 453-54 (D. Minn. 2011).

"While it is certainly theoretically possible that records from a previous or subsequent employer might be relevant in an employment discrimination case, such a theoretical possibility does not make the records discoverable." *Woods*, 2008 WL 151836, at *1. On this point, the district court in *Woods* succinctly notes as follows:

> [A]n employment discrimination plaintiff does not open her entire work history up for discovery by the defendant as a matter of course; rather, the defendant must demonstrate a specific reason why the information is relevant to the particular claims and defenses in the case at hand. In other words, absent a showing that the subpoenas are reasonably calculated to lead to the discovery of admissible evidence, *the Defendant is simply embarking on the proverbial fishing expedition, and the theoretical potential relevance of any information obtained by such discovery is outweighed by the interests of the plaintiff*.

*Woods*, 2008 WL 151836 at *2 (emphasis added). *Woods*, 2008 WL 151836 at *2. In *Woods*, the plaintiff in a race discrimination action sought to quash subpoenas to her former and current employers because, as here, such records are irrelevant to the claims and defenses in such a case. The court agreed, reasoning that while plaintiff put her employment with the *defendant* at issue, she had not put her entire employment history at issue. *Id.* at *1. It

follows, for example, that information about a plaintiff's performance—good or bad—with any other employer is decidedly inadmissible and irrelevant. *See, e.g., Neuren v. Adduci, Mastriani, Meeks & Schill*, 43 F.3d 1507 (D.C. Cir. 1995) (holding that trial court's admission of evidence of plaintiff's conduct at prior employer was error); *Zubulake v. UBS Warburg LLC*, 382 F. Supp. 2d 536 (S.D.N.Y. 2005) (evidence of employee's problems at prior employer inadmissible).

Here, MultiCare's *only* rationale for its subpoena is that "if [Dr. Scott's] current employer is writing her up for similar issues, … it would support the fairness of being written up similarly at [MultiCare]." This justification is dubious at best. First, when faced with a similar issue in another race discrimination case, this Court found "future performance evaluations or similar files [*i.e.*, records from the plaintiffs' subsequent employers] are not relevant to Plaintiffs' performance working for Defendants." *Rollins,* 2017 WL 1756576, at *5. The Court should so hold here. Second, whether Dr. Scott has been written up at Piedmont—she has not been—does not make the fact of the discrimination she suffered at MultiCare any more or less likely. Indeed, drawing such an inference from Dr. Scott's *alleged* character for misbehavior is prohibited by Fed. R. Civ. P. 404(b). Third, Discovery into third-party records must be based on more than mere hunches—particularly where such discovery can be had by less restrictive means has already occurred here. *See Dart Indus. Co. v. Westwood Chem. Co.*, 649 F.2d 646, 649 (9th Cir. 1980) (discovery against a non-party is more limited than the liberal discovery against parties); *Moon v. SCP Pool Corp.*, 232 F.R.D. 633 (C.D. Cal. 2005) (noting that the court should consider other possible sources of information than a third party). MultiCare's desire to know whether Dr. Scott has received performance evaluations or been subject to discipline has already been satisfied by Dr.

Scott's deposition testimony. Scott Tr. at pp. 8-9 To the extent it had any lingering questions about her subsequent employment at Piedmont, MultiCare could serve additional, narrowly tailored discovery request upon Dr. Scott clarifying her deposition testimony. Because other, less intrusive means exist for gathering information about Dr. Scott's subsequent employment performance, the Court should issue a protective order preventing MultiCare from issuing its proposed subpoena.

### C. Dr. Scott Meets the Good Cause Requirement for a Protective Order because MultiCare's Subpoena will cause an undue burden on Dr. Scott's employment relationship.

On a motion for a protective order, the Court has broad discretion to make "an order to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense, including… forbidding the disclosure or discovery." Fed. R. Civ. P. 26(c). Here, MultiCare's proposed subpoena will cause Dr. Scott an undue burden because it could have a negative impact on her current employment relationship. Courts have recognized that subpoenas directed at a plaintiff's current employer concerning disputes with past employers can have a "direct negative effect" on present employment and "should be used only as a last resort." *Warnke*, 265 F.R.D. at 69 (internal quotations omitted). At least one court has recognized that an employee "has a legitimate concern that a subpoena sent to her current employer under the guise of a discovery request could be a tool for harassment and result in difficulties for her in her new job." *Graham v. Casey's Gen. Stores*, 206 F.R.D. 251, 256 (S.D.Ind. 2002).

Dr. Scott urges the Court to exercise its discretion here both because the discovery MultiCare seeks is irrelevant and because it may harm her current employment relationship.

## V. CONCLUSION

Based on the foregoing, Plaintiff respectfully requests that the Court issue a protective order preventing MultiCare from subpoenaing her performance/disciplinary records from her current employer.

DATED this 28th day of March, 2019.

    SCHROETER GOLDMARK & BENDER

*s/ Jamal Whitehead*
REBECCA J. ROE, WSBA #7560
JAMAL WHITEHEAD, WSBA #39818
810 Third Avenue, Suite 500
Seattle, WA 98104
Phone: (206) 622-8000
roe@sgb-law.com
whitehead@sgb-law.com

*Counsel for Plaintiff*

**CERTIFICATE OF SERVICE**

I certify that I caused to be served in the manner noted below a copy of the foregoing pleading on the following individual(s):

| | |
|---|---|
| *Counsel For Defendant:*<br>Nicholas Gillard-Byers<br>Steven H. Winterbauer<br>Winterbauer & Diamond, PLLC<br>1200 Fifth Avenue, Suite 1700<br>Seattle, WA 98101<br>steven@winterbauerdiamond.com<br>mail@winterbauerdiamond.com | ☐ Via Facsimile<br>☐ Via First Class Mail<br>☐ Via Messenger<br>☐ Via Email<br>☒ Via EFiling/EService |

DATED this 28th day of March, 2019, at Seattle, Washington.

*s/ Jamal Whitehead*
JAMAL WHITEHEAD, WSBA #39818
SCHROETER GOLDMARK & BENDER
810 Third Avenue, Suite 500
Seattle, WA 98104
Phone: (206) 622-8000
Fax: (206) 682-2305
whitehead@sgb-law.com